UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

NATHANIEL DALE,

               Petitioner,                    Case No. 2:17-cv-158

v.                                     Honorable Paul L. Maloney

CONNIE HORTON,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Nathaniel Dale is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. Following a jury trial in the Berrien County Circuit Court, Petitioner was convicted of assault with intent to do great bodily harm less than murder (AGBH), Mich. Comp. Laws § 750.84. On February 3, 2014, the court sentenced Petitioner as a habitual offender-fourth offense, Mich. Comp. Laws § 769.12, to a prison term of 25 to 75 years.

On September 20, 2017, Petitioner timely filed his habeas corpus petition raising eleven grounds for relief, as follows:

    I.       Petitioner was denied his due process rights requiring reinstatement of Petitioner's appeal of right where the circuit court mishandled Petitioner's timely request for appointment of appellate counsel.

    II.     Petitioner was denied a fair trial where there was insufficient evidence to support the charge of assault with intent to do great bodily harm less than murder.

    III.    Petitioner's sentence of a mandatory 25-year minimum term under Mich. Comp. Laws § 769.12 constitutes cruel and unusual punishment in violation of the Michigan and federal constitutions.

    IV.    Petitioner's sentence of a mandatory 25-year minimum term under Mich. Comp. Laws § 769.12 violates the separation of powers doctrine.

    V.     Petitioner was denied his fundamental due process protection as guaranteed under both state and federal constitutions, when the trial court arraigned Petitioner

without first having acquired subject-matter jurisdiction over Petitioner, creating a jurisdictional defect that voids Petitioner's convictions.

VI.    Petitioner was denied his fundamental due process protections to a fair trial as guaranteed under both state and federal constitutions when the trial court exceeded its statutory authority when it presided over the preliminary examination, bound over Petitioner to itself in the circuit court, and then presided over the criminal proceeding, the result [of] which is a jurisdictional defect, and requiring Petitioner's immediate release from custody.

VII.   Petitioner was denied a fair trial as guaranteed under both federal and state constitutions, when counsel abandoned his duty to protect Petitioner's constitutional rights from the misconduct of both the court and the prosecution.

VIII.  Petitioner was denied a fair trial as guaranteed under both state and federal constitutions, when the prosecution failed to insure that Petitioner's due process protections were secured.

IX.    Petitioner reserves the right to raise the issue of constructive denial of appellate counsel should the need arise depending upon the outcome of the decision of the court of appeals, especially where appellate counsel, in raising its two issues, may have given jurisdiction to a court that did not have it from the beginning as argued throughout this pleading, thus, subjecting Petitioner to unwarranted prejudice.

X.     Petitioner suffers a miscarriage justice from the sentence of 25 years to 75 years where he was not charged as a habitual offender under Mich. Comp. Laws § 769.12(1)(A) and the court lacked jurisdiction of the subject matter to sentence Petitioner as a fourth habitual offender.

XI.    Petitioner was denied his fundamental due process protections where the trial court should have dismissed the information felony with prejudice because of the intentional and egregious acts of prosecutorial misconduct and deception.

(Pet., ECF No. 1, PageID.6-11.)  Respondent has filed an answer to the petition (ECF No. 15) stating that

the grounds should be denied because they are non-cognizable, procedurally defaulted, or without merit.

Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.

L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that

the petition be denied.

In the very early morning hours of September 7, 2013, Petitioner's girlfriend Jessica Summers arrived at the emergency department of Lakeland Hospital.[1]  She had a broken arm and a broken nose as well as some cuts and bruises.  She told the staff at Lakeland that she had been assaulted by her boyfriend.

Hospital personnel transported Ms. Summers to the police station at about 4:00 a.m.  She informed the police that Petitioner had caused her injuries.  She said he threw her down on the ground a couple of times and punched and kicked her.  When Petitioner threw her down, she reported, he said he was going to kill her.

The police brought her back to the home she shared with Mr. Dale, the home where the attack occurred.  Police found Mr. Dale there and took him into custody.

The initial complaint sworn against Petitioner prompted the prosecutor to authorize a warrant for a misdemeanor domestic violence charge.  (Compl. and Affid., ECF No. 4-1, PageID.94.)  Upon review, however, a felony complaint charging AGBH was sworn.  (Felony Compl., ECF No. 4-1, PageID.97.)  At his arraignment, Petitioner demanded a preliminary examination.  (Berrien Cty. Cir. Ct. Docket Sheet, ECF No. 4-1, PageID.99.)

At the preliminary examination, the prosecutor noted that Petitioner had committed prior offenses that would increase the penalty for the charge to life imprisonment.  (Prelim. Exam. Tr., ECF No. 16-2, PageID.207.)  The trial judge conducted the preliminary examination.  He bound Petitioner over to the circuit court on the AGBH charge.  (Bind Over, ECF No. 16-10, PageID.633.)

A few days after the preliminary examination, the prosecutor filed a felony information that charged Petitioner with AGBH and provided notice of the penalty enhancements because of Petitioner's

---

[1] Most of the facts are not and were not disputed.  Petitioner does not contest that his girlfriend suffered injuries that night, nor does he contest that she told the hospital and police that Petitioner caused those injuries.  Petitioner and the prosecutor disagree only with respect to whether or not Petitioner actually caused the injuries.

status as a habitual offender.  (Felony Information, ECF No. 16-10, PageID.634.)  From that point forward Petitioner was on written notice of the charge and the prospect of the habitual offender enhancement.

Only five witnesses testified at the trial, Benton Harbor Police Department Detective Wes Smigielski, physician's assistant Michael Callahan from Lakeland Hospital, Benton Harbor Police Department Officer Craig Kidney, Ms. Summers, and Petitioner.  At trial, Ms. Summers testimony was not consistent with the report she had given the hospital staff or the police.  Instead, Ms. Summers' claimed she had fallen down the steps.

The prosecutor played recorded conversations between Petitioner and Ms. Summers and Petitioner and others, conversations that took place after September 7, but before the trial.[2]  Those conversations suggested that Petitioner had attempted—in the end, successfully—to get Ms. Summers to change her story.

On the stand, Petitioner acknowledged a physical altercation with Ms. Summers; however, he claims he left before she had suffered any injury.  (Trial Tr., ECF No. 16-5, PageID.413-416.)  He later discovered that Ms. Summers had fallen down the stairs after he left the home.  (*Id*., PageID.416-417.)  He denied the prosecutor's claim that he encouraged Ms. Summers to change her story.  (*Id*., PageID.418-419.)

The trial judge instructed the jury on the crime charged, assault with intent to do great bodily harm less than murder, and the lesser included offense of assault and battery.  (*Id*., PageID.466-468.)  The jury deliberated for about an hour before returning its verdict that Petitioner was guilty of the more serious offense.  (*Id*., PageID.470-473.)

Only two of Petitioner's habeas issues touch upon what happened at trial: Petitioner's habeas issue II contends the evidence at trial was insufficient to support the verdict and a portion of habeas issue XI contends prosecutorial misconduct rendered his trial fundamentally unfair when the prosecutor

---

[2] Transcripts of the audio or video recorded conversations are in the record as exhibits filed in connection with Petitioner's first appeal.  (Transcripts, ECF No. 16-11, PageID.688-699.)

introduced hearsay evidence under Mich. Comp. Laws § 768.27c, which is limited to domestic violence cases, when Petitioner's case was not a domestic violence prosecution. Habeas issues III and IV relate to his sentence. Habeas issues I and IX relate to irregularities in the appointment and performance of his appellate counsel. Habeas issues V, VI, VII, VIII, X, and the balance of the claims raised in habeas issue XI relate to pretrial proceedings.

Petitioner's minimum sentence of 25 years was mandated by statute. Mich. Comp. Laws § 769.12(1)(a). The maximum sentence was discretionary with the trial court. Mich. Comp. Laws § 769.12(1)(b) ("If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years to life, the court . . . may sentence the person to imprisonment for life or for a lesser term."); Mich. Comp. Laws § 750.84 (1)(a) (assault with intent to do great bodily harm less than murder carries a maximum penalty of 10 years). The court acknowledged the harshness of the mandatory minimum sentence at Petitioner's sentencing hearing. (Sentencing Hr'g Tr., ECF No. 16-6, PageID.483.) The sentence was particularly harsh given the plea deals that were offered to Petitioner at the preliminary examination (Prelim. Exam. Tr., ECF No. 16-2, PageID.208-209), a pretrial status conference (Status Conference Tr., ECF No. 16-3, PageID.224-235), and a motion *in limine* hearing (Mot. *In Limine* Hr'g Tr., ECF No. 16-4, PageID.244-252). Petitioner was afforded every opportunity to plead guilty and serve a sentence that could have been as short as 10 months. He declined each time.

After Petitioner was sentenced, he was provided a form giving him notice of a right to appeal and to obtain court-appointed representation. (Sentencing Tr., ECF No. 16-6, PageID.484.) A week later, Petitioner filed the signed notice; in the version he filed first, Petitioner acknowledged receipt of the notice and added a handwritten note that he intended to retain his own counsel. (Notice, ECF No. 16-11, PageID.668.) A few weeks later, Petitioner filed another version of the notice. This time, he requested appointment of counsel. (Notice, ECF No. 16-11, PageID.670.) The "filed" stamp indicates that the document was initially filed on March 14, 2014. (*Id.*) That stamp, however, was crossed out.

The court has since explained that the initial filing was deficient in that Petitioner did not properly complete and sign the affidavit of indigency that would qualify Petitioner for the appointment of counsel.  (Berrien Cty. Cir. Ct. Op. and Order, ECF No. 16-8, PageID.542.)  Petitioner corrected that deficiency; but, the corrected version was not filed until March 24, 2014.  (*Id.*)  That was past the 42-day deadline.  For that reason, the court initially denied Petitioner's request to appoint counsel.  (*Id.*)  The court eventually appointed counsel.  (*Id.*)  By that time, however, Petitioner could no longer appeal by right, only by leave.

Petitioner, with the assistance of counsel, filed an application for leave to appeal in the Michigan Court of Appeals raising the issues identified as I through IV above.  (Appl. for Leave to Appeal, ECF No. 16-11, PageID.640-711.)  Petitioner sent a Standard 4 brief[3] to his counsel raising the issues identified as V through IX above (Pet'r's Std. 4 Br., ECF No. 16-10, PageID.595-628), but counsel refused to file it because counsel believed that Standard 4 briefs could only be filed if the appellate court granted leave to appeal.  (Dec. 26, 2014 Corr., ECF No. 16-10, PageID.638.)  By order entered March 3, 2015, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented.  (Mich. Ct. App. Order, ECF No. 16-11, PageID.639.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court.  (Pro Per Appl. for Leave to Appeal, ECF No. 16-10, PageID.556-638.)  Petitioner raised issues I through IV, and sought leave to add issues V through IX.  (*Id.*)  By order entered July 28, 2015, the Supreme

---

[3]The Michigan Supreme Court's administrative order regarding minimum standards for indigent criminal appellate defense services provides:

**Standard 4**
When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court. The defendant's filing in propria persona must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney . . . .

Mich. Administrative Order No. 2004-6.

Court allowed Petitioner to add the issues, but denied the application for leave to appeal. (Mich. Order, ECF No. 16-10, PageID.555.)

Petitioner returned to the trial court. Petitioner filed a motion for relief from judgment that raised his habeas issues X and XI. (Pet'r's Mot. for Relief from J., ECF No. 16-7.) His submission to the trial court, however, presented arguments that related to many, if not all, of issues I through IX as well. (*Id.*) By opinion and order entered June 6, 2016, the trial court denied Petitioner relief on several alternative grounds. The court stated that, to the extent the issues had been already raised on appeal and decided against Petitioner, relief was barred by Mich. Ct. R. 6.508(D)(2). (Berrien Cty. Cir. Ct. Op. and Order, ECF No. 16-8, PageID.545.) Additionally, the court concluded that, with respect to issues that had not been raised on appeal, relief was barred by Mich. Ct. R. 6.508(D)(3) because Petitioner had failed to show cause for his failure to raise them on his initial appeal or resulting prejudice. (*Id.*) Finally, the court addressed Petitioner's claims on the merits and determined that Petitioner was not entitled to relief. (*Id.*, PageID.545-552.)

Petitioner filed applications for leave to appeal the trial court's decision in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave by orders entered September 28, 2016 and September 12, 2017, respectively. (Mich. Ct. App. Order, ECF No. 16-13, PageID.793; Mich. Order, ECF No. 16-12, PageID.758.)

Petitioner then filed his habeas petition in this Court.

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

   The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

   A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Petitioner identifies several procedural improprieties which he contends deprived the Berrien County Circuit Court of subject matter jurisdiction over his criminal proceedings.  First, Petitioner contends that the September 9, 2013, Complaint and Affidavit are deficient.  Second, Petitioner claims that no return was filed.  Third, Petitioner complains that the Felony Information provides only an inadequate "bare bones description" of the alleged offense.  Fourth, Petitioner argues the Felony Information's notice regarding his habitual offender status was not properly timed in relation to the arraignment.  Fifth, Petitioner asserts the trial judge improperly played the dual role of examining magistrate at the preliminary examination and trial judge.  Additionally, Petitioner claims his trial counsel rendered ineffective assistance because he failed to object to these improprieties and the prosecutor violated due process by failing to protect Petitioner from these improprieties.

The procedural improprieties Petitioner identifies were considered by the trial court in its opinion and order denying Petitioner's motion for relief from judgment.  (Berrien Cty. Cir. Ct. Op. and Order, ECF No. 16-8.)  In every instance, the trial court concluded, as a matter of state law, that there were no procedural improprieties.  Instead, the court concluded, proper procedure was followed at every step of Petitioner's criminal prosecution.  Moreover, the court concluded that Petitioner's contention that the Berrien County Circuit Court did not have subject matter jurisdiction was entirely misdirected.  The court explained that Michigan circuit courts are courts of general jurisdiction and, unquestionably, have jurisdiction over felony cases such as Petitioner's.

9

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts.  *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976).  It is well-settled that a purported violation of state law does not provide a basis for federal habeas relief.  *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.*  Here, the state court determined that Petitioner's jurisdictional challenge was meritless.  Thus, there were no jurisdictional defects.

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Estelle,* 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  Specifically, with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review."  *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).  This Court is bound by the state court's determinations that proper procedures were followed and that jurisdiction over Petitioner and his criminal prosecution was established.  This ground for habeas relief is accordingly rejected.

Petitioner's claim that his counsel was ineffective for failing to challenge the court's jurisdiction likewise fails.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of

ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Counsel's failure to challenge the trial court's jurisdiction here did not fall below an objective standard of reasonableness.  Counsel's failure to raise a meritless issue never constitutes ineffective assistance.  *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.' "). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, Petitioner's ineffective assistance claim relating to his jurisdictional challenges has no merit.

Petitioner's claim that the prosecutor failed him because he permitted the court to proceed without jurisdiction also necessarily fails.  Misconduct by a prosecutor can rise to the level of a due process violation.  *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989).  However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993).  In Petitioner's case, the prosecutor would be no more bound to challenge the court's jurisdiction than Petitioner's counsel would. The claim of prosecutorial misconduct is plainly frivolous.

11

Although Petitioner's jurisdictional challenges are misdirected, his arguments do implicate one legitimate constitutional issue. Petitioner suggests that the alleged procedural improprieties deprived him of sufficient notice regarding the charge and the habitual offender enhancement.

The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See, e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. State of Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id*. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Here, the trial court concluded that Petitioner had notice that complied with Michigan's statutes and rules of criminal procedure. The court's analysis reveals further that Petitioner had constitutionally adequate notice regarding the charge and the potential enhancement. (*Id.*, PageID.546-550.) The charging documents that Petitioner attached to his appellate pleadings provide notice of the date, location, and victim of the assault. (Felony Information, ECF No. 16-13, PageID.847.) The documents also identify the statutory section that Petitioner was accused of violating. (*Id.*) With regard to the enhancement, the information provided notice of the statutory section pursuant to which the prosecutor

12

sought the enhancement as well as the alleged prior felonies upon which the enhancement would be based. (*Id.*)  The information also noted the nature and extent of the enhancement effect on Petitioner's potential minimum and maximum sentence.  (*Id.*)

In short, the charging documents here complied with the requirements of due process as well as the requirements of state law. Accordingly, Petitioner has failed to demonstrate that the state court's determination of these claims is contrary to, or an unreasonable application of clearly established federal law.  Petitioner is not entitled to habeas relief on his jurisdiction-related claims.

Petitioner contends that his 25-year minimum sentence constitutes cruel and unusual punishment and violates the separation of powers doctrine.

The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).

A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the

maximum penalty under state law.  Petitioner's sentence does not present the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Petitioner also claims that the habitual offender statute that mandates his 25-year minimum sentence is invalid under the separation of powers doctrine.  The Supreme Court has held that "the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments." *Sweezy v. New Hampshire*, 354 U.S. 234, 254 (1957).  Thus, as a matter of federal constitutional law Petitioner's claim is plainly meritless.

The Michigan Constitution prohibits members of one branch of the state government from exercising powers belonging to another.  *See* Mich. Const. art. 3, § 2.  As the Supreme Court long ago explained, "whether the statutes of a legislature of a state have been duly enacted in accordance with the requirements of the constitution of such state is not a federal question[.]" *Leeper v. Texas*, 139 U.S. 462, 467 (1891); *Betzer v. Bell*, No. 08-10246, 2009 WL 230222, at *6 (E.D. Mich. Jan. 30, 2009).  Petitioner's claims that Mich. Comp. Laws § 769.12 was not validly enacted under the Michigan constitution or that his 25-year mandatory minimum sentence violates the separation of powers between branches of state government both raise questions of state law.  *See Hackworth v. Bell*, No. 08-11059, 2009 WL 579414, at *6 (E.D. Mich. Mar. 5, 2009) (citing *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (holding that a claim asserting a conviction was obtained under an invalidly enacted statute, which also was allegedly a violation of the separation of powers clause, raised non-cognizable state-law issues)).

Petitioner has failed to demonstrate that his 25-year mandatory  minimum sentence is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on his sentence claims.

Petitioner contends the prosecutor conducted himself improperly when he elicited hearsay evidence—the testimony of Officer Kidney regarding the out-of-court statements of Ms. Summers—under Mich. Comp. Laws § 768.27c.  Petitioner argues further that his trial was rendered fundamentally unfair as

a result.  This issue touches upon a recurring theme in Petitioner's brief: he contends it was unfair that the initial warrant was authorized for a misdemeanor domestic violence charge, yet he was prosecuted for AGBH.

There are a number of reasons that Petitioner's argument fails.  First, the prosecutor did not "sneak" the allegedly objectionable evidence in.  The evidence was already admitted based upon the statute at Petitioner's preliminary examination.  (Prelim. Exam. Tr., ECF No. 16-2, PageID.211.)  The prosecutor gave notice of his intent to use the evidence long before Petitioner's trial.  (Berrien Cty. Cir. Ct. Docket Sheet, ECF No. 16-1, PageID.201.)  Petitioners' counsel acknowledged that fact during a pretrial conference.  (Status Conf. Tr., ECF No. 16-3, PageID.224-225.)

The court permitted the admission of Ms. Summers' statements through Officer Kidney at the preliminary examination and the trial.  "'A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings.'"  *See Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009) (quoting *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008)); *see also Bales v. Bell*, 788 F.3d 568, 577 (6th Cir. 2015).  Therefore, even if it were error for the court to have admitted the evidence under the statute, it would not be prosecutorial misconduct.

Second, Petitioner's reading of the words "domestic violence" in the statute is overly restrictive.  Petitioner contends it was error for court to admit Officer Kidney's testimony regarding Ms. Summers' statements because he was not charged with domestic violence.  There are several requirements that must be met before evidence is properly admitted under Mich. Comp. Laws § 768.27c, including a requirement that "[t]he action in which the evidence is offered . . . is an offense involving domestic violence."  Mich. Comp. Laws § 768.27c(1)(b).  Petitioner reads "offense involving domestic violence" to mean a charge of domestic violence.  The statute defines offenses involving domestic violence much more broadly.  The statute states that an "offense involving domestic violence" includes "an occurrence [where] . . . a person . . . caus[es] or attempt[s] to cause physical or mental harm to a family or household member."

15

Mich. Comp. Laws § 768.27c(5)(b).  Assault with intent to do great bodily harm against a household member would clearly fall within the statutory definition of an offense involving domestic violence.

Third, even if the evidence were improperly admitted under state law, it would not necessarily warrant habeas relief.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle,* 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard.  The Sixth Circuit has held that the Supreme Court has never recognized that the constitution is violated by the admission of unreliable hearsay evidence.  *Desai v. Booker*, 732 F.3d 628, 630-31 (6th Cir. 2013).  Instead, the Supreme Court has  merely "h[e]ld out the possibility that 'the introduction' of 'evidence' in general could be 'so extremely unfair that its

16

admission violates fundamental conceptions of justice.'"  *Id.* at 631 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

One fundamental concept of justice that might be violated by the admission of hearsay evidence is the criminal defendant's right, under the Confrontation Clause, to confront witnesses against him or her.  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

In this case, Ms. Summers testified at trial.  She was sworn as a witness before the jury. She was cross-examined by Petitioner's counsel before the jury.  All that is guaranteed by the Confrontation Clause is "'an opportunity for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Owens,* 484 U.S. 554, 559 (1988) (quoting *Kentucky v. Stincer,* 482 U.S. 730, 739 (1987)); *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).  As the trial transcript shows, Petitioner had the opportunity to effectively cross-examine Ms. Summers.  Although Ms. Summers' testimony preceded the testimony of the Officer Kidney, it was incumbent upon Petitioner to seek to recall Ms. Summers to the stand if he wished to further test her regarding the statements she had made out-of-court to Officer Kidney.  Here, that was unnecessary because Ms. Summers testified, in the first instance, that her out-of-court statements to Officer Kidney were false.  The jury simply did not believe her.

Petitioner has failed to demonstrate that the prosecutor's efforts to admit Ms. Summers' out-of-court statements against him under Mich. Comp. Laws § 768.27c was contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief.

Petitioner faults the trial court for failing to appoint appellate counsel where, Petitioner contends, he had properly requested the appointment of counsel within the time period specified by the Michigan Court Rules.  Petitioner's self-serving description of the underlying facts might support his argument, but his description is not supported by the record.

A review of Michigan's procedure for the appointment of appellate counsel and perfection of appeals in criminal cases is necessary to evaluate Petitioner's claim.  In a Michigan criminal case, an appeal of right must be taken: (1) within 42 days after entry of the judgment appealed from; or (2) in accordance with Michigan Court Rule 6.425(G)(3).  Mich. Ct. R. 7.205(A)(2).[4]  An appeal of right is taken by filing a "Claim of Appeal."  Mich. Ct. R. 7.205(D).  Where appellate counsel is appointed following a timely request for the appointment,  the order appointing counsel is entered on a form specifically entitled "Claim of Appeal and Appointment of Counsel."  Mich. Comp. Laws § 6.425(G)(3).  The trial court's entry of that order suffices as a timely filed claim of appeal.  *Id.*

The timeliness of a request for the appointment of appellate counsel is determined by Mich. Ct. R. 6.425.  In a case that involves a conviction following a trial, after imposing sentence, the sentencing court must advise the defendant on the record that: (1) he is entitled to appellate review of his conviction and sentence; (2) if the defendant is financially unable to retain a lawyer, the court will appoint one; and (3) the request for a lawyer must be made within 42 days after sentencing.  Mich. Ct. R. 6.425(F)(1).  The sentencing court must give the defendant a request for counsel form that instructs the defendant that the form must be completed and returned to the court within 42 days after sentencing if the defendant wants the court to appoint a lawyer.  Mich. Ct. R. 6.425(F)(3).

---

[4] Michigan Court Rule 7.205(A)(2) provides three other possible dates of timely filing: subparagraph (b) computes the 42 period from the date a timely motion for appointment of counsel is denied; subparagraph (d) computes the 42 day period from the date a timely motion for new trial, directed verdict, or to correct an invalid sentence is denied; and subparagraph (e) permits a pro per inmate's filing date to be the date the prisoner puts the claim of appeal in the mail at the prison.  Mich. Ct. R. 7.205(A)(2).  None of those computations are relevant to Petitioner's case.

The sentencing court provided Petitioner the form as required.  That form is entitled "Notice of Right to Appellate Review and Request for Appointment of Attorney."  (Notice, ECF No. 16-11, PageID.668-669.)  Petitioner filed the signed form a week after he was sentenced.  It is referenced in the Berrien County Circuit Court's docket sheet as a "Notice of Appeal."  In making his argument, Petitioner equates the "Notice of Appeal" with a "Claim of Appeal."  That is simply not the case.  When the trial court docket references "Notice of Appeal" it is referencing the required notice of the right to appeal, not a claim of appeal.

The notice of the right to appeal form provided Petitioner notice that he had a right to appellate review, that the court would appoint an attorney if Petitioner could not afford one, AND that Petitioner had to make the request in writing within 42 days, including completion of the financial schedule on the back of the form.  (*Id.*, PageID.668.)  The form required Petitioner to sign a receipt of notice, whether or not he wanted counsel.  By so signing, Petitioner acknowledged that he understood he must return the completed request for appointment within 42 days.

The form provided another signature block to indicate that Petitioner was requesting counsel.  By signing in that space, Petitioner would be actually requesting the appointment of counsel and showing his financial condition by completing the financial schedule on the back of the form.  That form also required a signature acknowledged by a notary public.

When Petitioner first returned the form, he acknowledged receipt of the notice.  However, he did not sign the request for appointment of counsel and did not complete the financial schedule.  Indeed, Petitioner took the additional steps of writing on the form that he would be getting his own lawyer and that the financial schedule was "N/A."   (*Id*, PageID.668-669.)

Weeks later, with three days left in the 42-day period, Petitioner submitted an incomplete request for the appointment of counsel.  He signed the form indicating that he wanted the court to appoint appellate counsel, but he failed to complete or sign the required financial schedule on the back.  The clerk

returned the form to Petitioner.  Petitioner completed it as required, signing it on March 21, 2014, and returned it to the court. By the time Petitioner finally filed a completed request for appointment of appellate counsel, the 42-day period had expired.

Petitioner's tardiness carried significant consequences.  The court is required to grant a timely request which, in turn, constitutes a timely claim of appeal.  The court "should liberally grant an untimely request as long as the defendant may file an application for leave to appeal."  Mich. Ct. R. 6.425(G)(1)(b).  That is what happened in Petitioner's case.  The court, eventually, appointed counsel. Because Petitioner filed late, however, he had forfeited his appeal by right and could only seek appeal by leave.

Petitioner argues that the trial court mishandled his "Notice of Appeal."  He is simply wrong.  Petitioner failed in his obligations.  Petitioner relies on cases where counsel, or at least someone other than the convicted criminal, "dropped the ball" to support his claim for relief.  *See, e.g., Dorn v. Lafler*, 601 F.3d 439 (6th Cir. 2010); *Hardaway v. Robinson*, 655 F. 3d 445 (6th Cir. 2011).  In those cases, the Sixth Circuit has recognized that losing an appeal of right to be left with only appeal by leave is a significant consequence.  That is beyond dispute.  Here, however, that loss is attributable to Petitioner's neglect, not any failure by counsel or the court.  The state court's refusal to permit Petitioner an appeal as of right under those circumstances is in no way contrary to, or an unreasonable application of clearly established federal law.  Indeed, the Supreme Court has indicated quite the opposite.  In *Goeke v. Branch*, 514 U.S. 115 (1995), the court stated that it "did not hold . . . that due process requires state courts to provide for appellate review where the would-be appellant has not satisfied reasonable preconditions on her right to appeal as a result of her own conduct."  *Id*. at 120; *see also Taveras v. Smith*, 463 F.3d. 141, 149 (2d Cir. 2006) ("New York is entitled to require a 'would-be appellant[] . . . satisfy[y] reasonable preconditions on her right to appeal as a result of her own conduct,' . . . by establishing documentary requirements and timely

filing schedules.") (internal citation omitted).[5]   Accordingly, Petitioner is not entitled to habeas relief premised on the failure to afford him an appeal as of right.

Petitioner's claim that appellate counsel, once appointed, rendered ineffective assistance, also fails.  Petitioner essentially claims that counsel was ineffective for failing to raise habeas issues V-XI. For the reasons stated above, however, those issues are meritless.  Counsel's failure to raise a meritless issue does not constitute ineffective assistance.  *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.' "). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, Petitioner cannot prevail on his claim that his appellate counsel rendered ineffective assistance for failing to raise habeas issues V-XI on appeal.

Finally, Petitioner complains that the evidence was not sufficient to support a verdict of guilty on the charge of AGBH.  Petitioner's argument returns to his theme that the prosecutor could have instead charged him with a less serious assault or domestic violence felony.  Petitioner's argument is misdirected.  It is the prerogative of the state to determine what charge or charges to bring:

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.  Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456.

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted).  Here, the prosecutor properly exercised his discretion to charge Petitioner with AGBH.

---

[5] Of course, that does not mean that every precondition is reasonable, or reasonably applied.  *See, e.g., Calaff v. Capra*, 215 F. Supp. 3d 245, 251 (S.D.N.Y. 2016); *McMullan v. Jones*, No. 05-70807, 2007 WL 2983951 (E.D. Mich. Oct 11, 2007).  Petitioner, however, has provided no basis to conclude that the preconditions imposed here are unreasonable.

As a fallback, Petitioner attacks the prosecutor's proofs as to the severity of the injuries caused to the victim.  He contends the injuries were not severe enough to support an inference that he intended to cause great bodily harm.  That is a legitimate attack on the sufficiency of the proofs; but, the attack is not supported by the record.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).  The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.

Petitioner asserts that the elements of AGBH are:

(1) an attempt or threat with force or violence to do corporal harm to another (an assault, and

(2) an intent to do great bodily harm less than murder.

(Pet'r's Br., ECF No. 4, PageID.45.)  Petitioner notes further that "great bodily harm . . . mean[s] physical injury that could seriously and permanently harm the health or function of the body."  (*Id.*)  Petitioner also acknowledges that the physician's assistant testified that the fractured forearm and nose could have resulted in nerve damage and a loss of function to the arm or the erosion of cartilage and alteration to the shape of the victim's nose.  (*Id.*)  Additionally, Officer Kidney testified that Ms. Summers told him that Petitioner

voiced his intent to kill Ms. Summers as he was beating her.  (Trial Tr., ECF No. 16-5, PageID.404.)  The injuries caused and Petitioner's threat provide sufficient evidence of Petitioner's intent to do great bodily harm.  *See, e.g., Williams v. Stewart,* No. 2:17-cv-11426, 2018 WL 4953088, at *4 (E.D. Mich. Oct. 12, 2018) ("'The fact finder may infer the necessary intent from the defendant's actions, including the use of a dangerous weapon or the making of threats, as well as the nature of the victim's injuries.'") (citing with approval the Michigan Court of Appeals); *Conner v. Palmer*, No. 10-12092, 2011 WL 2669276, at *3 (E.D. Mich. July 7, 2011) ("'The evidence that defendant pursued the victim and threatened to kill him, coupled with the injury inflicted, was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant intended to do serious injury of an aggravated nature.'") (quoting with approval the Michigan Court of Appeals). Accordingly, Petitioner is not entitled to habeas relief on his sufficiency claim.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.

Dated:    January 17, 2019                    /s/ Timothy P. Greeley
                                              Timothy P. Greeley
                                              United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).